UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHRISTINE KORTHALS												PLAINTIFF

v.														CIVIL ACTION NO. 3:03CV-430-S

GRANGE INSURANCE												DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Grange Insurance, for partial summary judgment (DN 33). Grange seeks judgment as to the claims of the plaintiff, Christine Korthals, for bad faith in violation of Kentucky's Unfair Claims Settlement Practices Act, KRS § 304.12-230 ("UCSPA") and under common law.[1]

On June 29, 1999, the plaintiff, Christine Korthals, was struck in the rear while driving her automobile on I-264 in Louisville, Kentucky. Following the accident, Korthals was transported to Suburban Hospital where she complained of right arm, right thumb, and neck pain.

At the time of the accident, Korthals was insured under a policy with Grange which provided underinsured motorist coverage ("UIM" benefits). She settled with the tortfeasor for policy limits of $100,000.00. In this action Korthals seeks UIM benefits. She also contends that Grange breached its contract and engaged in unfair claims settlement practices in its dealings with her.

Korthals was diagnosed with dystonia in her right shoulder by Dr. Walter L. Olson, Jr. Dr. Olson recommended botulin toxin ("Botox") injections as a course of treatment. Dr. Olson estimated that the injections would cost $3,000.00 each. Korthals never received the Botox

---

[1]Count IV of the complaint alleges only a violation of the UCSPA. Korthals states that she has claimed a violation of common law bad faith (Response brief, p. 2). Grange has addressed this theory of recovery. The court will therefore evaluate both common law and statutory bad faith, as the two theories are necessarily intertwined. *See, Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)("there is no such thing as a 'technical violation' of the UCSPA, at least in the sense of establishing a private cause of action for tortious misconduct justifying a claim of bad faith.")

injections because she could not obtain pre-approval for payment for them from Grange. All other treatment costs were paid by Grange upon the submission of claims.

The evidence establishes that someone in Dr. Olson's office contacted Grange concerning the proposed course of treatment. An office note reflects that Dr. Olson's orders for the Botox injections were faxed to Grange. The file note states:

> Insurance:
> – GRANGE AUTO
> "OK" per Sharon Murphree
> 1-800-837-0801
> but she cannot guarantee benefit coverage

It is Korthal's contention that Grange's failure to pre-approve payment for the injections constituted a *de facto* denial of coverage. She contends that, due to the high cost of the injections, she was unable to pay for them and risk a later denial of coverage.

Korthals urges that she was faced with a Hobson's choice[2]. The cost of these injections clearly presented a difficult situation where no pre-approval process existed by which Korthals could be assured reimbursement. However, it is beyond the purview of this court to require Grange to change its claims processing practices.

The court is constrained to decide whether Grange's refusal to pre-approve the payment of basic reparation ("no-fault") benefits constituted actionable bad faith. The court concludes that, under the authority of *Foster v. Kentucky Farm Bureau Mutual Insurance Co*., 189 S.W.3d 553 (Ky. 2006), the Kentucky Motor Vehicle Reparations Act, KRS 304.39, *et seq*., provides the exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits. The court stated that

> *Gryzb v. Evans*, 700 S.W.2d 399 (Ky. 1985) provides that where a statute both declares the unlawful act and specifies the civil remedy available, the aggrieved

---

[2] After Thomas Hobson (1544-1631), English liveryman, from his requirement that customers take either the horse nearest the stable door or none. An apparently free choice that offers no actual alternative. Webster's II New Riverside University Dictionary (1994).

> party is limited to the remedy provided by the statute...KRS 304.39-210 states that the penalty for any delay in payment of basic reparation benefits is payment of interest at the rate of 12% per annum on the delayed benefits, or 18% per annum if the delay was without reasonable foundation...MVRA is a comprehensive act which not only relates to certain tort remedies, but also establishes the terms under which insurers pay no-fault benefits, and provides for the penalties to which insurers are subjected if they fail to properly pay no-fault benefits.

*Foster*, 189 S.W.3d at 557.[3]

Korthals contends that her claim for bad faith falls outside of the MVRA and is thus cognizable.  KRS 304.30-210 provides:

> Basic and added reparation benefits are payable monthly as loss accrues.  Loss accrues not when injury occurs, but as...medical expense is incurred...

Korthals urges that her claim is not contemplated by the MVRA because, as no cost was incurred or paid for Botox injections, there was no loss which Grange had a duty to pay under the MVRA.  Rather Korthals premises her claim for bad faith on both the common law as set forth in *Whittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), and on subsections 2, 4, 5, 6, and 7 of the UCSPA.

*Whittmer* states that "an insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."  *Whittmer*, 864 S.W.2d at 890.  The pivotal term for purposes of this analysis is "claim."  Korthals herself has asserted that there was no claim for payment made to Grange.  She urges that no medical expense was incurred since injections were not given, no payment was made to the physician, and no claim was filed with Grange.  If there was no "claim," there is no actionable conduct on the part of Grange under common law.

---

[3] *See also, Hartley v. Geico Casualty Company*, 2006 WL 2786929 (Ky.App. Sept. 29, 2006), *citing, Foster, supra., Phoenix Healthcare of Ky., LLC v. Kentucky Farm Bureau Mutual Insurance Company*, 120 S.W.3d 726 (Ky.App. 2003), and *Allen v. Safe Auto Ins. Company*, 332 F.Supp.2d 1044 (W.D.Ky. 2004)(BRB claim brought under KMVRA subsumes claim of bad faith).

Notwithstanding the foregoing analysis, Korthals appears to argue that even though no medical expense was incurred, she had a "claim" for the expense which she intended to incur, but did not, because it was "effectively denied" by Grange when it declined to provide assurance of payment in advance. Korthals' attempt to distinguish an actual loss incurred under the MVRA and a proposed claim for an unincurred expense under common law fails, however. Despite this distinction in terminology, Korthals sought assurance of payment of basic reparation benefits for the Botox injections. The MVRA is the comprehensive act which governs no-fault claims. Thus, Korthals' argument has come full circle. Any claim for no-fault benefits, even a proposed one, falls under the MVRA comprehensive scheme. Korthals' common law claim for bad faith is subsumed by the act.[4]

The MVRA does not impose a duty to pre-approve the payment of basic reparation benefits. In fact, such an interpretation is at odds with the language of the act.

Korthals' bad faith claim necessarily begins with the right to basic reparation benefits. KRS 304.39-030 establishes that "[i]f the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits..." "Basic reparation benefits" means "benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle..." KRS 304.39-020(2). "Net loss" means "loss less benefits or advantages, from sources other than basic and added reparation insurance..." KRS 304.39-020(10). "Loss" means "accrued economic loss consisting only of medical expense, work loss, replacement services loss, and

---

[4] Korthals quotes Justice Scott's concurrence in *Foster, supra.* at 557, in which he states "Nor do I adopt the statement in this opinion that declares '[t]he Kentucky Motor Vehicle Reparation Act...provides an exclusive remedy where an insurance company wrongfully delays or denies payment of no-fault benefits.' Insurance companies are subject to the same rules of conduct as others. To date, we have not declared they are 'statutorily free' from common law claims of 'bad faith' and I do not believe this to be the intent of this statement in this case." Justice Scott's concurrence is contrary to the law of the case. *Foster* notes that "the Kentucky MVRA preempts general insurance law where an insurance claim arises as a result of physical injury caused by a motor vehicle accident and establishes remedies for violation of the statute." The majority holding that the MVRA affords the exclusive remedy for an insurance company's bad faith delay or denial of claims for basic reparation benefits controls the disposition herein.

survivor's replacement services loss. Noneconomic detriment is not loss." KRS 304.39-020(5). "Medical expense" means "reasonable charges incurred for reasonably needed products, services, and accommodations..." KRS 304.39(5)(a).

By definition, basic reparation benefits are reimbursement for accrued costs. As Korthals incurred no such costs, she has no claim for basic reparation benefits. As she has no claim for basic reparation benefits for Botox injections she did not receive, she has no claim for delay or denial under the MVRA.

Korthals contends that Grange's conduct violated various subsections of the UCSPA. First, to the extent that she alleges that the refusal to guarantee the payment of basic reparation benefits for the proposed injections is effectively a denial of payment, her exclusive remedy lies in the MVRA. Further, were her claim to be interpreted to fall outside of the parameters of the MVRA, there is no provision in the UCSPA addressing a refusal to guarantee payment of benefits in advance of the incurrence of the expense.

> The subsections of the UCSPA upon which Korthals relies are:
>
> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies...
>
> (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> (5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (7) Compelling insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds...

KRS 304.12-230.

The facts do not establish such acts of bad faith. On summary judgment the nonmovant must provide "concrete evidence supporting its claims and establishing the existence of a genuine issue

of fact." *Cloverdale Equipment Company v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Korthals does not contend that she completed or submitted proof of loss statements to Grange. Therefore, subsection (5) is clearly inapplicable. Similarly, there is no contention that Grange offered to settle a claim with Korthals for a substantially reduced sum. Subsection (7) thus does not apply. Subsections (4) and (6) are inapplicable inasmuch as Korthals did not incur al loss, and thus never submitted a claim to Grange. For the reasons stated earlier in this opinion, we adhere to the finding that a request for assurance of payment of an as yet unincurred expense is not a claim. Finally, the court has been shown no evidence that Grange failed to acknowledge and act reasonably promptly upon communication from Korthals' physician. The evidence establishes that Grange's representative acknowledged and responded that she could not guarantee benefit coverage. Thus the evidence does not suggest a violation of subsection (2) of the statute, but rather a dissatisfaction with the content of the communication.

For the foregoing reasons, summary judgment will be granted as to Korthals' claims for common law and statutory bad faith. A separate order will be entered in accordance with this opinion.